## OYER AND TERMINER.

THE PEOPLE agt. AICHINSON.

The public prosecutor on the trial of an indictment is not entitled to any peremptory challenge of jurors.

What is meant by statutes being *in pari materia.*

(*Waterford and Whitehall Turnpike vs. The People*, 9 *Barb. R.* 161, dissented from.)

*Queens County Oyer and Terminer. Before* S. B. STRONG, *Justice of the Supreme Court,* FOSDICK, *County Judge, and* MITCHELL *and* HENDRICKSON *Associate Justices. November* 1852.

The prisoner was arraigned and tried for the murder of Roeloff Voorhies. The district attorney peremptorily challenged one of the jurors, before the panel had been exhausted. The counsel for the prisoner objected to the challenge, on the ground that the public prosecutor had no right to make it.

J. G. LAMBERSON, *Dist. Att'y, for the People.*

S. L. GRIFFIN and A. HADDEN, *for the Prisoner.*

By the Court, S. B. STRONG, Justice.—At common law any number of jurors might have been challenged peremptorily in behalf of the crown, without alleging any other reason for the objection than *quod non boni sunt pro rege.* The power, however, having been much abused, was taken away by the act of 33d Edward I, commonly called *ordinatio inquisitionibus.* That act provided that "if they that sue for the king will challenge any of the jurors as not indifferent for the king, in order that the inquest shall not remain untaken for that cause, they shall assign of their challenge a *cause certain,* and the truth of the challenge shall be inquired of." The English judges in the construction of this act decided that, as its principal design was to prevent the injuries resulting from a failure to procure the requisite number of jurors from those duly summoned, the right of the crown to challenge for the general cause was not entirely taken away; but that such challenge might be interposed when the juror was first called, and should remain in suspense until a suf-

ficient number was obtained from the panel (1 *Vent.* 309; *Sir T. Raym.* 473; *Skin.* 82; 2d *St. Tr.* 744; 2d *Hale,* 271; *Hawk, ch.* 43, § 3), but if that was exhausted without obtaining a full jury, the public prosecutor was then bound to assign a cause certain for the challenge primarily made by him, and unless that was proved, the challenged juror was to be sworn (3 *St. Tr.* 52; 4 *St. Tr.* 177, 407; *Sir T. Raym.* 473; *Bac. Abr. Juries E.* 10). The terms of the act would seem to require that the cause should be assigned, and inquiry made as to its truth, when the challenge was first made; and if they had been thus applied, the right of the officers of the crown to challenge peremptorily would have been entirely abolished; but the judges of that day were no doubt inclined to favor the king, and therefore declined making any greater change than the reason assigned for passing the act required. The common law rule, as modified by the statute and the decisions under it was adopted in this state, and must prevail here, except so far as it may have been affected by our own legislation.

By the 22d section of the act of the 19th April 1786, it was provided that in all cases where the attorney general of this state in behalf of the state, or he who shall in any case prosecute for the people of this state, shall challenge any juror as not indifferent, or for any other cause, he who shall make any such challenge shall *immediately* assign, and show the cause of such challenge, and the truth thereof shall be inquired of and tried in the same manner as the challenges of other parties are, or ought to be, inquired of and tried (1 *Greenleaf's Laws,* 261). This provision was adopted in the Revised Laws of 1801 and of 1813, with a proviso in each, that nothing in the act contained should be construed to take away the right of peremptory challenge in any case where the same was then allowed by law. The act of April 19th, 1786, was undoubtedly designed to make some changes in the law as it was then understood. The rule in reference to this subject then, was, that the public prosecutor need not assign the cause of his challenge or show the truth thereof until the panel had been ineffectually exhausted, and as a consequence of that, he had a qualified right (if I may use an expression which seems almost to involve a contradiction) to

challenge peremptorily. By the act which I have last quoted, he seems bound to assign the cause and to prove the truth thereof *immediately*. He could not wait until the panel had been wholly called over, but the juror was to be admitted or rejected before the name of another was drawn from the box. The rule of procedure which had alone saved the power under the act of Edward I, having been abolished, the right fell with it.

The proviso in the Revised Laws of 1801 and 1813 was adopted probably to prevent an inference (which certainly would have been far fetched) that the latter clause of the section which it purported to qualify, might imply that a challenge was to be tried and proved in all cases, and thus abolish the right of *defendants* in capital cases to make peremptory challenges. I am confident that the construction which I have put upon the act of 1786 was adopted and prevailed while that act remained unchanged; and that during its continuance no peremptory challenge was allowed to public prosecutors. The right to make one was claimed in the case of Joseph Pharaoh, who was tried for murder at a Court of Oyer and Terminer, held in the county of Suffolk, before Chief Justice Spencer in 1821. It was disallowed by that learned judge without hesitation, on the ground that the settled practical construction of the statute was against the claim. He had great experience in criminal cases, both as attorney general and on the bench, and his opinion was entitled to, as it had, great weight.

The district attorney does not, however, claim the right to make such challenge in this case under the common law or the statute to which I have referred, but insists that he has it under the provisions contained in the Revised Statutes (2 *R. S.* 734, § 11), and the act of April 27, 1847 (*Statutes of* 1847, *p.* 130). The clause in the Revised Statutes is in these words: "The attorney general or district attorney, prosecuting for the people of this state, shall be entitled to the same challenges in behalf of this state, either to the array or to individual jurors, as are allowed to parties in *civil* causes, and the same proceedings shall be had thereon as in civil actions." This was no doubt designed as a substitute for the provision which I have quoted from the act of 1786, and the Revised Laws of 1801 and 1813; and it neither

purported to nor did it make any substantial change    It of course related only to challenges for special cause, as such only were allowed in civil actions.    It gave no additional powers to the public prosecutor as he had previously the right to challenge the array or the polls for cause shown, in the same way as the defendant (*Co. Litt.* 156; 2 *Inst.* 431; 2 *Hale*, 271; *Bac. Abr. Juries E.* 10; 1 *Chit. Crim. Law*, 534). The object was, no doubt to continue a preëxisting limitation.    Clearly it did not give, nor was it designed to give to the attorney general or district attorney a right to interpose a peremptory challenge under any circumstances.    The reference was in terms to the existing rule in civil cases.    There is no direction that the practice in the two classes of cases which it assimilates, shall continue the same under all circumstances, or that a change in civil actions shall create a correspondent change in criminal cases.    The word " are," used in a statute is undoubtedly sometimes ambulatory, so as to embrace what may be the existing relation of any particular subject at a future period.    But it has never, so far as I know, been extended so as to comprehend additions distinct from the original subject of the enactment.    That would be stretching a provision beyond what the legislature could be reasonably supposed to have contemplated.

The first section of the act of April 27th, 1847, is as follows: " Upon the trial of any issue or issues of fact joined in a civil action, each party shall be entitled peremptorily to challenge two of the persons drawn as jurors for such trials (*Laws of* 1847, *ch.* 134, *p.* 130).    Literally this provision is limited to practice in civil actions.    There is nothing in the act to evince any design to extend the right which it confers to public prosecutors in criminal cases, and it is not reasonable to suppose that the legislature, had it intended to make so important a change, would have left it to be effected by mere, and to say the least of it, very remote inference.

As the right now claimed was not conferred directly by the act of 1847, it must, if it exists at all, result from the enactments in that and the preceding statute which I have quoted, taken together.    The provision in the Revised Statutes referred to the practice in civil actions for the purpose of definition and by no

The People agt. Aichinson.

means evinces a design to create a union which might be progressive. Possession of the same qualities does not constitute identity, nor will a delegation of the same powers create a union in the donees. Where there is identity, an addition to an integral part, and where there is union an addition to one of the subjects composing it is an addition to the whole. But a change in one subject is not a change in another, so long as they preserve their individuality. Upon these principles a statute includes all embraced in the subject matter directly described and all inseparably united to it. Where identity or union has been created by a statute, and a subsequent one relates to the same subject matter or constituent part of it, the two are *in pari materia* and should be construed (except where there is a palpable contradiction) as if they had originally constituted one enactment. Statutes, as was remarked by Chief Justice Hosmer, in the case of The United Society vs. The Eagle Bank (7 *Conn. Rep.* 469), are *in pari materia,* which relate to the same person or thing, or the same class of persons or things. The word *par* must not be confounded with *simile.* It is used in opposition to it, as in the expression, *magis pares sunt quam similes,* intimating not likeness merely, but identity." Possibly the learned'chief justice was a little inaccurate in saying that the word *par* denoted identity, but the legal maxim uses it in that sense, and it must be applied accordingly. Now are the subjects of the two enactments which I am considering identical. We have seen that it has not been declared in terms that they are so, nor does the act of 1830 create an identity but a *present similarity* only. An existing likeness is created in the challenges in the two classes of cases, but it is not declared that one shall continue or the extension of either. There is no necessary connection or dependence. Neither is there any general resemblance in the classes of cases to which the challenges respectively belong from which an intention to continue the similitude might be implied. Civil and criminal cases differ widely from each other, in their institution, termination and intermediate proceedings, and to some extent in the principles which control the verdict of the jury. The two challenges which are respectively provided for in the two enactments differ essentially from each other; that in

the act of 1830 being for *cause*, and that in the act of 1847 being *peremptory*, and of course without the assignment of any cause. Surely statutory provisions, one applicable to civil actions, and the other to criminal cases, and the first applicable to challenges for cause, and the other to challenges without cause, can not be deemed to be *in pari materia*. The result then is that the two provisions can not be taken together and construed as one enactment and that the right conferred upon the public prosecutor in the provision quoted from the Revised Statutes of 1830 was not extended by the act of 1847. I am aware that a contrary decision was made by the Supreme Court sitting in the fourth district (Waterford and Whitehall Turnpike vs. The People, 9 *Barb.* 164), but notwithstanding my high respect for the learned judges who decided that case, in opposition however to the opinion of a venerable and distinguished jurist who sat with them, I am bound in a case of so much importance as the one now before me, to abide by my own settled conviction.

The challenge is disallowed.